STANLEY AND EVELYN ROSENSTEIN, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 63192. Filed April 28, 1959.

*Thomas H. Krise, Esq., Ernest Knox, Esq.,* and *John H. O'Hara, Esq.,* for the petitioners.

*Hubert E. Kelly, Esq.,* for the respondent.

[1] Proceedings of the following petitioners were consolidated herewith for trial: Harry and Eve Rosenstein, Docket No. 63193; Louis and Sylvia Rosenstein, Docket No. 63194; Nancy Rosenstein and June Rosenstein, each By Her Natural Guardian and Father, Harry Rosenstein, As Next of Friend, Docket Nos. 63195 and 63198, respectively; Jan Sara Rosenstein and Richard Simon Rosenstein, each By His (or Her) Natural Guardian and Father, Stanley Rosenstein, As Next of Friend, Docket Nos. 63196 and 63197, respectively.

234

**OPINION.**

VAN FOSSAN, *Judge:* Petitioners are all members of the partnership of S. Rosenstein & Sons. The deficiencies here in issue arise as

a result of the disallowance of certain alleged advertising, travel, and entertainment expenses deducted on the partnership returns for the fiscal years ended June 30, 1951, through June 30, 1953. Some of the disputed items have been settled by agreement of the parties.

Advertising, travel, and entertainment expenses may be deducted from gross income only insofar as they are ordinary and necessary in carrying on a trade or business.[2] Whether or not a particular expenditure is a business expense turns on the facts of the case and the burden of proof is on the taxpayer to show that such expenditures were made and were primarily business rather than personal expenses. *Henry Cartan*, 30 T.C. 308 (1958).

Petitioners allege that it was the practice of the partnership during the Christmas season to give sums of cash varying in amount from $25 to $300 to the employees of certain customers and suppliers. During the fiscal years ended June 30, 1951, through June 30, 1953, petitioners allege that the sum of these payments amounted to $17,000, $27,500, and $20,000, respectively. These sums were charged to advertising. The Commissioner challenged the deductibility of such amounts and determined deficiencies accordingly.

As to the alleged payments of cash, petitioners, on whom rests the burden of proof of error, have failed to carry their burden in several basic respects.

They refused to divulge, when requested by the Government on cross-examination at the trial of these cases, the identity of the recipients of the alleged payments. They do not plead lack of memory or loss of appropriate records. Apparently no record was ever made of the names of the individual recipients. Undoubtedly, had they so desired they could have furnished the names of many of the recipients, at least in sufficient numbers to permit a check or verification. This they refused to do. By their obstinacy they have effectively tied the hands of the agents of the Government in the proper discharge of their duty of investigating and verifying the tax returns of the petitioners. They also have made it impossible for the Court to find either the fact of such payments or to find that the payments were *bona fide* ordinary and necessary business expenses.

---

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions :

(a) EXPENSES.—

(1) TRADE OR BUSINESS EXPENSES.—

(A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered ; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business ; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity. * * *

In effect, petitioners say to the Government, "We claim that we are entitled to deductions for advertising in the aggregate amount of $69,500, but we refuse to reveal the names of the recipients of the payments of such amounts and we will not co-operate with the Government nor the Court in verifying the fact and purpose of payment." It is an old maxim of the law that taxpayers, in dealing with the Government, must turn square corners. This, petitioners have failed to do. Respondent's determination of deficiencies is presumptively correct. He who challenges such a finding must carry the burden of proof of error. By their deliberate refusal to submit proper supporting information, petitioners have failed to discharge their duty.

Petitioners' testimony that the sums were paid, without giving any specific amounts or naming the recipients or giving any information as to the services rendered by such recipients so as to enable the Government to investigate the items and verify by inquiry of the recipients their character and their allowability, adds nothing of any probative weight to the bare claims of the deductions made in the returns. When a deduction in a return is challenged by the Commissioner, and a deficiency determined, and petitioner carries the matter into this Court, he has the burden of satisfying the Court that the deductions claimed are properly allowable as ordinary and necessary business expenses. On the record before us, we are unable to hold that petitioners have successfully carried this burden.

These questions arose in an early decision of the Board of Tax Appeals in *The National Concrete Co.*, 3 B.T.A. 777 (1926). We there held that when the president of the taxpayer corporation refused to divulge, either to the Commissioner or at the trial, the names of certain influential people to whom the corporation made remuneration for assistance in securing public works contracts, the taxpayer had not furnished sufficient evidence of the alleged expenditures and had failed in its burden of proof.

*The National Concrete Co.* case was followed by *Evens & Howard Fire Brick Co.*, 8 B.T.A. 867 (1927). There, the taxpayer, a manufacturer of fire brick and other clay products, turned over the proceeds of a $5,000 check to certain contractors to be used by the contractors in securing municipal contracts for which the taxpayer expected to furnish the materials. The taxpayer did not set forth the names or the addresses of the persons to whom the $5,000 was paid. Citing *The National Concrete Co.*, *supra*, we held that we did not have sufficient evidence upon which to base a determination that the $5,000 was an ordinary expense, and sustained the Commissioner's determination that the expenditure was not deductible.

The taxpayer in *O'Laughlin* v. *Helvering*, 81 F. 2d 269 (C.A.D.C., 1935), affirming 30 B.T.A. 1327, was the secretary of a company selling building and paving materials in the city of Chicago and other towns in Cook County, Illinois. The treasurer of the company was authorized to draw checks to the taxpayer, who was to use the money to pay commissions on various sales made by individuals other than the company's regular salesmen. On his income tax returns for 1927 and 1928 the taxpayer included, as commissions received, $19,000 and $48,000, respectively. However, he claimed these same amounts as deductions for commissions paid out. The taxpayer testified that he did not retain any of the money for himself; that some of the money was spent for, or donated to, Christmas basket funds, labor unions, prize fights, football games, banquets and political organizations for campaign purposes; that he kept no record nor any list of any expenditure; that he did not know to whom he made any of the payments, or the amounts or dates thereof, but that it was all spent for the benefit of the company. We held that the evidence was not sufficient to overcome the Commissioner's determination.

The Court of Appeals for the District of Columbia affirmed, stating:

When a deduction is claimed, the government has an undoubted right to demand a full disclosure of the facts on which the claim is based, for otherwise it would be at the mercy of the unscrupulous taxpayer. Taxation is not only practical—it is vital. The obligation of good faith and fair dealing in carrying out its provisions is reciprocal and, as the government should never be overreaching or tyrannical, neither should a taxpayer be permitted to escape payment by the concealment of material facts.

The *O'Laughlin* case was cited in *Greenfeld* v. *Commissioner*, 165 F. 2d 318, affirming a Memorandum Opinion of the Tax Court. There, the taxpayer received the proceeds of certain stolen Government bonds. The Commissioner determined deficiencies in income tax and an addition to tax for fraud. The taxpayer testified that he was a racing broker and received commissions of 1 to 2½ per cent from bookmakers for bets placed on horse races, and that one customer placed a number of bets through him, delivering various Government bonds to cover them. The taxpayer further testified that he did not recall the names of any of the seven or eight bookmakers with whom he had placed bets. The court, quoting lengthily from *O'Laughlin*, held that the taxpayer had not shown respondent's determination to have been in error. See also *Birnbaum* v. *Commissioner*, 117 F. 2d 395 (C.A. 7, 1941).

On the strength of the above authorities and on the facts in evidence in these cases, we hold that petitioners have failed to establish their right to the deductions of cash payments.

This is not to say that a taxpayer must be able to account for every luncheon bought and every cocktail drunk in the course of business entertainment. But when an item is challenged it must be supported by adequate evidence. A taxpayer who has access to such evidence and refuses to produce it cannot complain if a decision goes against him.

The partnership had a custom also of furnishing liquor to its suppliers, purchasers, and their servicemen, and of distributing Notre Dame football tickets to people in various neighboring plants with which it did business. Some of the liquor was used by Harry and Stanley for entertaining at home. Stanley occasionally attended the football games if he had a business associate in town. Respondent disallowed only a small part of the amounts so claimed.

Petitioners have failed to show that respondent erred in disallowing a portion of the expenditures for liquor and football tickets. The evidence is so general in nature that it is impossible to find any fact specifically related to the disputed items. The disallowance is therefore affirmed.

We are satisfied that the evidence is sufficiently specific as to the expenditure of $405 on March 5, 1951, for furniture given as a Christmas gift to a party with whom the partnership had been doing busines for many years, and we hold that this item is deductible.

On May 1, 1951, the partnership made a payment to Kraemer's Olympia Hotel in the amount of $446.63, representing expenses incurred by Harry and his wife, Eve, while attending a meeting of dealers and people who handle the partnership line, together with their wives. Respondent disallowed the entire amount. On brief, respondent conceded that the expenditure was deductible to the extent of $223.31. There is no evidence that Eve actively entertained, performed any secretarial services, or otherwise furthered the purposes of the partnership while at the meeting. The remaining portion of the expenditure is, therefore, not proven to be deductible.

A payment of $79.95 made to the Ries Furniture Company in December 1951 for furniture sent to a customer, and a payment of $10 made to Rose Katz in January 1952, representing the cost of a gift certificate, are deductible as ordinary and necessary business expenses.

Petitioners failed to show the nature or explain the business purpose of other miscellaneous charges to advertising expense claimed as deductions on the partnership return for the fiscal year ending June 30, 1952, or of other charges to advertising expense in the amount of $2,525 claimed as deductions on the partnership return for the fiscal year ended June 30, 1953. These deductions are, therefore, disallowed.

*Decisions will be entered under Rule 50.*