## GOLDBERG v. COMMISSIONER OF INTERNAL REVENUE.
### No. 6590.

Circuit Court of Appeals, Seventh Circuit.
July 15, 1938.

Rehearing Denied Jan. 3, 1939.

Robert Jackson, of Washington, D. C., Aaron Holman, of New York City, and Thomas H. Fisher, of Chicago, Ill., for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Joseph M. Jones, Sp. Assts. to Atty. Gen., for respondent.

Before SPARKS and MAJOR, Circuit Judges and LINDLEY, District Judge.

MAJOR, Circuit Judge.

There is here presented for review a decision of the Board of Tax Appeals redetermining a deficiency in income tax against the petitioner for the calendar year 1928, in the amount of $49,007.48, plus a 50% penalty of $24,503.74, a total of $73,511.22.

Upon the hearing before the Board of Tax Appeals, the respondent conceded that in the absence of proof of fraud, the Statute of Limitations was a bar to any assessment.

During the year in question, petitioner claimed to be the owner of a large number of shares of stock of the Savold Tire Company and the New York Savold Tire Company, the former being a Delaware corporation and the latter appearing to be a subsidiary of the former. In 1928, petitioner claims to have sold to one, David Wiener, his brother-in-law, for the sum of $1,290.-80, 12,908 shares of stock in these corporations, the larger portion of which was stock of the Savold Tire Company. A loss of $385,843.66 was claimed on this transaction and deducted from petitioner's gross income in his return filed for the year 1928. It is this deduction which respondent contends was fraudulent, and while other questions are discussed, this is the essential one around which the controversy revolves, a solution of which is determinative.

The circumstances concerning the alleged sale of stock in 1928 are, as related by petitioner, that he offered to sell the same to Wiener, who was a stock broker in New York City. An agreement was reached and the stock was mailed to Wiener, accompanied by the following letter:

"December 22, 1928.
"Mr. Dave Wiener,
   "C/o Wiener Bros.,
   "148 Madison Ave.,
   "New York, N. Y.
"Dear Dave:
   "I am sending you this stock under separate cover in accordance with my sale to you. This stock cost me a lot of money and, buying it at the price you are buying it, I hope you will make a good thing of it. Please send your check for $1290.80.
      "Yours very truly,
"SHG:EV"

Wiener did not pay for the stock as agreed, but some three years later, he gave

petitioner a note for money which he had borrowed at that time, and petitioner thought the alleged consideration for the stock might have been included.

In his income tax return for the year 1928, petitioner, on the face of the return, reported $26,420.26 as "profit from sale of real estate, stocks, bonds, etc." In the supporting schedule, in connection therewith, the following items are reported:

| Kind of property | Date acquired | Amount realized | Cost | Net Profit |
|---|---|---|---|---|
| Colorado Fuel & Iron Co. Stock | 1928 | $ 32,492.50 | $ 31,975.00 | $ 517.50 |
| McCrory Corporation stock | | 11,612.80 | 10,000.00 | 1,612.80 |
| Gasoline-Savold stock | | 487,364.42 | 462,134.46 | 25,229.96 |
| Studebaker Corp. stock | | 80,760.00 | 81,700.00 | *940.00 |
| Total | | 612,229.72 | 585,809.46 | 26,420.26 |

*Loss.

In March, 1930, a revenue agent examined petitioner's records and reported that "tax payer maintains a complete set of personal records. All items were verified and found to be correct. * * * It is recommended the return, as filed, be accepted as correct."

In the early part of 1933, another investigation was made by another revenue agent. It was then discovered that the amount of $25,229.96, shown as profit in "Gasoline-Savold" stock, as disclosed in petitioner's return, was the result of combining two transactions, one in stock of the Gasoline Products Corporation and the other in stock of the Savold Corporation. The separate computations as made by petitioner's bookkeeper on the retained copy of the return were as follows:

| | Amount Received | Cost | Net gain or loss |
|---|---|---|---|
| Gasoline Products | $486,073.62 | $ 75,000.00 | $411,073.62 |
| Savold Co. | 1,290.80 | 387,134.46 | *385,843.66 |
| Total | | | 25,229.96 |

*Loss.

It will thus be seen that the tax payer realized a profit of $411,073.62 on the sale of Gasoline Products Company stock, which was subject to a substantial tax, and that by asserting a loss on the Savold Company stock of $385,843.66, there was a net gain of only $25,229.96, by which process petitioner effected a material reduction in the amount of tax for which he otherwise would have been liable. The explanation, by petitioner's bookkeeper for the combining of the two items referred to was to the effect that five transactions had to be reported in the space allowed for only four items and it was, therefore, necessary or at least convenient to combine the two items and report them as one.

The agent making the investigation at that time, reported in part as follows:

"The loss of $385,924.66 on the sale of stock of the Savold Tire Corporation should have been disallowed before the statute of limitations had expired for the reason that the stock was worthless prior to 1928; in fact the stock was ruled off the New York Curb in 1920 and the last quotations are to the effect that 33,327 shares were sold by R. L. Day & Co., brokers of Boston, at auction on Dec. 31, 1921, for $500.00 for the lot. The company ceased operations and cannot be located. Inasmuch as this loss was disclosed on the original return which was accepted after an original examination no question of attempted evasion or fraud would stand."

In 1934, after the period for making an assessment had expired, except by reason of the fraud statute [1] respondent notified petitioner of his determination to disallow the deductions claimed, for the following reasons:

"Loss claimed by you on Savold Tire stock has been disallowed, as it is held that the sale in the year 1928 was not bona fide. Evidence disclosed by the revenue agent who conducted the investigation of your income tax liability indicates that the stock became worthless in a prior year."

It is contended by respondent that the stock in question, to the knowledge of petitioner, became worthless prior to the year 1928 and that the petitioner actually claimed and obtained a deduction from his income

[1] 26 U.S.C.A. § 276. Exceptions to general period of limitation.

"(a) False return or no return. In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time."

tax for the year 1919 upon stock in the Savold Company of the same character and issue upon which he claimed a deductible loss for the year in question. Much testimony was heard by the Board as bearing upon that question. Petitioner's income tax return for the year 1919 was offered, in which the tax payer claimed a deduction in the amount of $673,625.78, resulting largely from losses on the Savold stock. Said return referring to the Savold Company contains the following statement:

"This Company is practically bankrupt and no return is expected. Balance Sheets of the Company are not available but may be furnished on request. No bidders on Stock Exchange. Shares are considered worthless."

Upon an investigation of petitioner's tax liability for 1919, there was some dispute as to whether petitioner was entitled to the loss as claimed. Petitioner was advised that it would be necessary for him to submit further proof to substantiate his claim for deduction. In support of such claim, he thereupon procured the affidavits of several brokers to the effect that the stock was worthless; he secured a letter from the Secretary of State of New York stating that the New York Company had filed no annual reports and that there was no record of the standing of the company financially; a letter from the Secretary of the State of Delaware to the effect that the company had not filed its annual report for 1920, and he procured an affidavit from his attorney who had made an effort on behalf of the petitioner to collect money from the Savold companies which had been advanced by petitioner, and who had made an effort to dispose of several thousand shares of Savold Stock for the petitioner. The attorney stated in the affidavit that as a result of exhaustive investigation, the "stock has absolutely no value; and had absolutely no value in November, 1919, and that said stock could not, at that time, or any time since, have been sold to anybody for any price, same having been offered and refused." These several affidavits were filed with the Revenue Agent and made a part of the agent's report recommending that the deduction be allowed, which recommendation was approved by the Commissioner.

■ Petitioner contends that the Board of Tax Appeals was in error in holding that in a fraud case, the Commissioner's determination is presumptively correct. It is said that the Board completely disregarded the fundamental rule that the burden of proof on such an issue is on the Commissioner, and that the Board proceeded upon a contrary theory. We think in this petitioner is mistaken. The Board, in its decision, made this statement: "Not only does the evidence in this case fail to overcome this presumption, but it affirmatively convinces us that the Commissioner was right." This language, no doubt, is what has confused the situation. We think it is well established that in an issue such as here presented, there is no presumption to be indulged in in favor of the Commissioner's determination, and that the burden to establish the charge of fraud is upon him. Old Mission Portland Cement Company v. Helvering, 293 U.S. 289, 55 S.Ct. 158, 79 L.Ed. 367; Snell Isle, Inc. v. Commissioner, 5 Cir., 90 F.2d 481. Notwithstanding the somewhat confusing language used by the Board in its decision, it is apparent that the Board's conclusion was not based upon such a presumption, but upon the evidence before it as is indicated by its statement, "but it affirmatively convinces us that the Commissioner was right." A study of the record convinces us that there is substantial evidence to sustain the conclusion of the Board with reference to the charge of fraud, and this is sufficient. Wickham v. Commissioner, 8 Cir., 65 F.2d 527. In fact, the circumstances lead almost irresistibly to this conclusion.

■ The return, on its face, has the earmark of deception. It is far more reasonable to believe that the purpose of combining two items, one of which had shown a large gain and the other a loss almost as great, was done deliberately for the purpose of deceiving rather than that there was not a sufficient number of lines on the form used to list these items separately. The alleged sale of the stock to petitioner's brother-in-law appears to be a sham rather than a bona fide sale. While it is claimed the purchase price was $1.00 per share, yet it was never paid. Petitioner evidently knew that the stock was worthless and had so known for many years. As heretofore related in his tax return for 1919, he made the express representation that the shares were worthless and the company practically bankrupt. He procured and filed numerous affidavits, including that of his attorney, who apparently was well versed concerning the stock to the effect that it was worthless. It is contended by petitioner that such evi-

dence was improperly admitted, but we conclude otherwise. Certainly, the tax payer should not be permitted to "blow hot and cold," to claim that stock has no value when it is to his interest and then claim it has value when the situation is reversed. A statement or claim made by a party to litigation contrary to what he makes or claims in court is always admissible, so far as we are aware.

We find no error which would justify a reversal of the decision of the Board of Tax Appeals. The same is

Affirmed.