**O'DWYER et al. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 9152.

Circuit Court of Appeals, Fifth Circuit.

April 9, 1940.

Rehearing Denied June 11, 1940.

Wm. H. Talbot, of New Orleans, La., for petitioners.

Newton K. Fox and Sewall Key, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and John M. Morawski, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

Petitioners, George L. O'Dwyer and R. T. O'Dwyer, were, during the tax years in question, professional gamblers. The petition is concerned as to George, with income tax deficiencies for the years 1923–31 inclusive, 50% penalties for the years 1923 to 1931, inclusive, 25% penalties for the years 1924, 1925, 1927 and 1929, and 5% penalty for the year 1930; and as to his wife, with tax deficiencies for the same years except 1930 and 1931, and 25% penalties for 1924, 1925 and 1927. As to R. T., it is concerned with deficiencies and penalties for the years 1929, 1930 and 1931. None of the petitioners kept books from which either their gross or their net income could be determined and the commissioner, in default of such books, determined their income for the years in question, in accordance with the best data available to him, including the increases in each year in net assets of the taxpayers. Appealing to the board from the commissioner's determination as to George, of tax deficiencies of $25,117 and penalties of $8,632.11; as to Mrs. O'Dwyer, of tax deficiencies of $1,422.54 and penalties of $959.14; and as to R. T., of tax deficiencies of $28,494.67 and penalties of $14,645.05, petitioners secured substantial reductions in deficiencies and penalties as to Mr. and Mrs. George and a 50% reduction as to R. T. O'Dwyer.

Complaining that their evidence overthrew the commissioner's determination in other particulars than those found by the board in their favor, and that the board erred, in its re-determination of the deficiencies, in not giving effect to this evidence, petitioners are here attacking the re-determination and asking its overthrow.

They recognize that the board's findings must be sustained if supported by evidence, and that because they kept no books from which their correct condition could be determined, they are under a heavy burden to overthrow the commissioner's findings and determination. They yet insist that the undisputed evidence is such as to permit of no other conclusion than that the commissioner's determination was invalid because without rational foundation, and excessive, and that in the face of the proof that it was, the board erred in denying petitioners' relief from it. Helvering v. Taylor, 293 U. S. 507, 55 S.Ct. 287, 79 L.Ed. 623.

The points most seriously made are: (1) that the commissioner's determination of the deficiencies on the "increase of net assets" basis was fundamentally wrong in that it assumed that petitioners entered 1929 without capital, when it was the positive testimony of R. T. O'Dwyer corroborated by Mangiapani, an employee of the bank, that in the beginning of 1929, he was worth around $300,000 and of George O'Dwyer that he began the year with a capital of $40,000; (2) that the commissioner charged land purchases made by R. T. O'Dwyer in 1929 and 1930, and of George O'Dwyer in 1931 to earnings instead of capital, and that $20,000 charged to George as income in 1930, was not income but money borrowed from R. T.; (3) that cashier's checks issued in the names

of the O'Dwyers and cashed by them were part of their capital and not a division of gambling profits; (4) that R. T. should not be charged as income in 1931, with cashier's checks of $46,567 and also with $20,101.22, expended by him in that year in building a boat, for the only reasonable assumption is that the boat was built with proceeds of some of the checks. In addition, petitioners contest the imposition of the fraud penalties as not justified under the evidence, and insist that the statute of limitations has run, as to the years 1929 and 1930.

It was stipulated as to R. T. and George O'Dwyer, that for the years in question, each was engaged in operating a gambling establishment and that each had pleaded guilty to criminal indictments charging him with fraudulent evasion of income taxes for 1929, 1930 and 1931. There was a further stipulation as to taxpayers' living expenses and as to certain other expenditures, and as to items of income and deductions, and a statement of assets and liabilities not in dispute.

In addition both George and R. T. testified orally. George testified that he had $40,000 at the beginning of 1929; R. T. that he had $300,000, while both swore that George had borrowed from R. T., first $70,000 and then $20,000 to build Club Forest. R. T. also testified that the land purchases he made were from capital and not from income. Both testified generally as to keeping a bank roll for the operation of the business and replenishing it, and that the cashier's checks were a part of that bank roll, not a division of profits, but there was no detailed testimony on their part and no corroboration whatever as to how the business was handled. The testimony was in the main, general in its nature and where it was specific as to their ownership of capital in 1929 and as to the borrowing of $20,000 by George and the purchases as made from capital rather than income, there was no corroboration, but only their unsupported testimony.

The testimony was heard orally and there was opportunity to judge the demeanor of the witnesses and to weigh their testimony at first hand. In view of their pleas of guilty to fraudulent tax evasions, of the fact that for many of the years in question, George made no returns whatever, and that for some of them, amended returns showing considerably larger income were made after petitioners had learned that their incomes were being investigated by the government, and especially in view of the careful consideration and treatment, notwithstanding these damaging, impeaching facts accorded the evidence by the board, we could not say, if it were within our province to do so, that the decision of the board, as to deficiencies and penalties was not fairly called for by the evidence. Certainly we cannot say, and if we cannot we may not at all disturb its findings, that the board's re-determination is without substantial evidence to support it.

The decision and order of the board is affirmed.